IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICH AUREL, #317239                    *
          Plaintiff,
    v.                                 *   CIVIL ACTION NO. ELH-15-1422

WARDEN RICHARD E. MILLER               *
BILL BEEMAN
COLIN OTTEY                            *
CLARK JANETTE
          Defendants.             *
                          *****

**MEMORANDUM**

On May 18, 2015, self-represented plaintiff Mich Aurel[1] filed a "Petition to Habeas Corpus in (the) United States District Court in Maryland State." ECF 1. He claims that he is subject to "abuse," "discrimination," and "manipulation" by personnel at the North Branch Correctional Institution ("NBCI"), where he is incarcerated. In particular, Aurel states that he is Romanian and Jewish (ECF No. 1 at 1-3) and alleges that he is being discriminated against due to his race, religion, and nationality. *Id.*[2]

Aurel asserts that he is being denied proper health care for medical symptoms, a proper religious diet and condiments for his meals, access to the telephone to contact friends and family, and a prison job and programing. *Id*. at 2-3. He seeks a transfer to Romania to serve the remainder of his sentence.[3] *Id.* Accompanying the "Petition" is Aurel's 31-page attachment

---

[1] Aurel signs and captions his name as "Aurel Mich." ECF Nos. 1 & 2. However, the Maryland Department of Public Safety and Correctional Services Inmate Locator website lists his name as Mich Aurel. The court will continue to refer to plaintiff as Mich Aurel.

[2] The "Petition" was not accompanied by the filing fee or an indigency motion. In light of the disposition of this case, however, Aurel shall not be required to cure the deficiency.

[3] Aurel claims that he is confined for a murder he did not commit. The state court docket shows that Aurel is serving two consecutive life sentences on convictions for first- and second-

which reveals that he is subject to a Department of Homeland Security notice of action to determine whether he is subject to removal; copies of his travel documents; correspondence with the U.S. Department of Justice, the Maryland Department of Public Safety and Correctional Services, and the U.S. Immigration and Customs Enforcement, regarding Aurel's request for transfer to Romania; and entries from Aurel's Division of Corrections' classification management and employment record.[4]  ECF No. 1-1.  The "Petition" was instituted as the above-captioned case and construed as a civil rights action for injunctive relief (*i.e.*, international transfer) filed pursuant to 42 U.S.C. § 1983.

This court is mindful of its obligation to construe liberally the pleadings of self-represented litigants such as Aurel, holding them to a less stringent standard than those drafted by attorneys.  *See Erickson* v. *Pardus,* 551 U.S. 89, 94 (2007); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Even under this less stringent standard, however, the complaint is subject to summary dismissal.

The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so.  But, a district court may not rewrite a petition to include claims that were never presented, *Barnett v. Hargett,* 174 F.3d 1128, 1133 (10th Cir. 1999),  construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court.  *Beaudett v. City of Hampton,* 775 F.2d 1274,

---

degree murder.  *See State v. Mich*, Case Number 96244C (Circuit Court for Montgomery County).  *See*  http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=96244C&loc=68&detailLoc=MCCR.

[4] Documentation shows that in 2013, Aurel was removed from his work assignment in the Maryland Corrections Enterprise ("MCE") Furniture Manufacturing Plant.  ECF No. 1-1 at 21.

1278 (4th Cir. 1985). "The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court." *Leneau v. Aplin,* C.A. No. 4:09–932–CMC–TER, 2009 WL 1749430, at *2 (D. S.C. June 22, 2009) (citing *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 390–91 (4th Cir.1990)).

Aurel requests injunctive relief to effect his international transfer to a prison in Romania. A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). For injunctive relief to be granted, the claimant must establish that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 19 (2008). All four requirements must be satisfied. *See Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam). Courts should grant preliminary injunctive relief involving the management of prisons only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994). A plaintiff must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted).

Plaintiff's current claims relate to alleged problems he has experienced in his receipt of appropriate medical care, diet, outgoing communications, and job and programming assignments. Aurel's access to proper medical care has been under constant scrutiny by this court and is currently subject to review in other federal complaints filed by him. *See Aurel v.*

*Wexford*, Civil Action No. ELH-13-3721 (D. Md.); *Aurel v. Warden*, Civil Action No. ELH-15-1127 (D. Md.). Moreover, allegations regarding Aurel's access to outgoing mail and telephone communications is being litigated in yet another federal civil rights action initiated by Aurel. *See Aurel v. Mail Room North Branch, et al.*, Civil Action No. ELH-14-1813 (D. Md.). Further, Aurel provides no particular facts, *i.e.*, dates and times, regarding the alleged dietary lapses. Indeed, all he states is that he is being denied a proper Kosher diet and salad dressing, 2 ounces of mayonnaise, and /or salt and pepper to put on his vegetables. ECF No. 1 at 2.

With regard to Aurel's remaining allegation as to prison jobs and programming, his claim fails to set out a colorable constitutional claim. Although prison employment may serve an important rehabilitative function, the law is well settled that a prisoner has no constitutional right to participate in an educational or rehabilitative program. *See Moody v. Daggett*, 429 U.S. 78, 88 at n. 9 (1976) (due process clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where prisoner suffers "grievous loss"); *Bulger v. United States Bureau of Prisons,* 65 F.3d 48, 49 (5th Cir. 1995) ("Prisoner classification and eligibility for rehabilitation programs...are not directly subject to 'due process' protections") (citing *Moody*). Aurel has no constitutionally protected liberty interest in the participation in programming and/or jobs at NBCI, as is necessary to maintain a due process claim. Under the analytical framework which the Supreme Court set out in *Sandin v. Conner,* 515 U.S. 472 (1995), termination from a prison job is not an atypical or significant hardship in relation to the ordinary incidents of prison life. Thus, no constitutionally protected liberty interest is infringed. *Id*. at 485.

Moreover, Aurel's bald allegation of discrimination, without any basis in fact, does not set out a colorable claim. To the extent Aurel claims that he has been subject to discrimination on the basis of race, it is clear that he has a constitutional right to be free from such

discrimination. *See generally Lee v.Washington,* 390 U.S. 333 (1968). However, "absent some factual evidence the court will not look behind the determinations of [ ] officials on mere accusations that they are racially motivated." *Chapman v. Reynolds,* 378 F.Supp. 1137, 1140 (W.D. Va. 1974); *see Gibson v. McEvers,* 631 F.2d 95, 98 (7th Cir. 1980) (conclusory allegations of racial discrimination insufficient to state claim). Aurel has alleged no facts to render plausible his conclusory allegation that unlawful discrimination—whether based on race, nationality, or religion—played a motivating rule in defendants' alleged actions. Under these circumstances, Aurel's conclusory allegation of discrimination on account of race, religion, and nationality is insufficient to state a claim. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190–91 (4th Cir. 2010) (complaint's conclusory allegations of racially-based discrimination fails to assert facts establishing the plausibility of that allegation), *aff'd*, ____ U.S. ____, 132 S. Ct. 1327 (2012); *Idris v. Ratner Company/Creative Hairdressers*, 2014 WL 5382633, *3 (D. Md. 2014) (conclusory allegations of discrimination on account of race, religion, and age are insufficient to defeat a motion to dismiss).

      Accordingly, to the extent that Aurel seeks emergency injunctive relief, he has failed to show that he will be subject to irreparable harm if his relief request is not granted or that he is likely to succeed on the merits. The court-construed civil rights action for injunctive relief shall be dismissed, without prejudice.

      An Order follows.

Date:  May 21, 2015             _____/s/_____
                                           Ellen L. Hollander
                                           United States District Judge